UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x
MOLLY SANDERS,                                          :
                                                        :
                            Plaintiff,                  :
                                                        :
            v.                                          :            24-CV-770 (SFR)
                                                        :
ZURICH AMERICAN INSURANCE COMPANY,                      :
                                                        :
                            Defendant.                  :
------------------------------------------------------------- x

**MEMORANDUM & ORDER**

Plaintiff Molly Sanders was employed by Defendant Zurich American Insurance

Company ("Zurich") from April 2022 to June 2023. Sanders was terminated soon after

telling her supervisors that she was considering applying for leave under the Family and

Medical Leave Act ("FMLA") to care for an ailing parent and to address her own health

concerns. Sanders asserts that Zurich violated the FMLA by interfering with her right to take

leave and by retaliating against her for beginning the process of applying for leave. She also

brings related claims under the Connecticut Fair Employment Practices Act ("CFEPA").

Zurich moves to dismiss the Amended Complaint in its entirety. For the reasons that follow,

I deny Zurich's motion to dismiss as to the FMLA claims but grant the motion as to the

CFEPA claims.

## I.    <u>BACKGROUND</u>

### A.    **Factual Background**

The following well-pleaded facts from the Amended Complaint are accepted as true

for purposes of this motion. Sanders began working for Zurich in April 2022 as a General

Liability Claims Specialist. Am. Compl. ¶ 6, ECF No. 22. Sanders took five or six days of

paid time off (PTO) in September 2022 for stomach surgery. *Id.* ¶¶ 8-9. Although Zurich knew Sanders was eligible for leave under the Connecticut Family Medical Leave Act, Zurich did not offer Sanders time off until after she returned from her surgery. *Id.* ¶ 10. Zurich did not ask any of Sanders' coworkers to manage her responsibilities while she was absent. *Id.* ¶ 11. On her return, confronted with a significant backlog, Sanders "fell behind Defendant's guidelines for completion." *Id.* Sanders spoke to her supervisor, Donna Lewczyk, and expressed her concern that "she had come back to work too quickly following her surgery." *Id.* ¶ 12. Sanders received a written warning for performance issues in December 2022. *Id.* ¶ 14.

At this time Sanders was living with her then-boyfriend, who "control[ed] when she would leave the house" and "ma[de] threats of violence against Plaintiff." *Id.* ¶ 15. When Sanders disclosed this abusive relationship to another supervisor, Alicia Albert, Albert responded by stating "I don't need details." *Id.* ¶ 17. After Sanders and her then-boyfriend ended their relationship, Sanders took time off work to find new housing. *Id.* ¶ 18. During this absence Zurich "refused to reassign any of Plaintiff's work, or to accommodate her workload due to the necessity of taking time off to address her need to move." *Id.*

Sanders received a "final warning" for performance issues on January 12, 2023. *Id.* ¶ 19. After receiving the "final warning" for performance in January 2023, Sanders met weekly with Albert. *Id.* ¶ 20. Albert told Sanders that she had observed an improvement in Sanders' performance. *Id.*

In February 2023, Sanders took PTO to care for her father who had stage 4 cancer. *Id.* ¶ 21. Although Zurich knew the reason Sanders took leave was to care for her father, Zurich

did not "offer or provide Plaintiff with any information regarding [Connecticut's Family Medical Leave Act]." *Id.*

In May 2023, Sanders met with Albert and informed Albert that her father was scheduled to undergo surgery on July 6, 2023, and that Sanders would need to take leave to help care for him. *Id.* ¶ 22. The Amended Complaint states that Albert knew Sanders was pursuing treatment for "mental health issues." *Id.* ¶ 26. Sanders was diagnosed around this time with "depression, post-traumatic stress disorder, generalized anxiety disorder, and borderline personality disorder." *Id.* ¶ 23. Sanders told Albert "that she was thinking of applying for FMLA." *Id.* ¶ 25.

Soon after informing Albert that she was considering applying for FMLA leave, Sanders received a notice from Zurich's human resources department stating that her "final warning" issued in January 2023 had been extended. *Id.* ¶ 27.[1] On June 19, 2023, Sanders emailed the human resources department to request FMLA paperwork. *Id.* ¶ 28. Sanders received the FMLA paperwork on June 20, 2023. *Id.* ¶ 29.

Sanders was on leave for personal reasons from June 23 to June 26, 2023. *Id.* ¶ 30. When Sanders returned to work on June 27, 2023, she met with Albert. *Id.* ¶ 31. During the meeting, Albert and a representative from Zurich's human resources department told Sanders that her employment was terminated. *Id.* ¶ 31.

---

[1] The Amended Complaint does not describe what it means for a "final warning" to be extended.

**B.     Procedural History**

After Sanders filed suit in Connecticut Superior Court, Zurich removed the action to this Court on April 26, 2024. ECF No. 1. With leave from the Court,[2] Sanders filed the operative Amended Complaint on October 2, 2024. Am. Compl., ECF No. 22. The five-count Amended Complaint seeks damages on the grounds that Zurich is liable for (1) FMLA interference, (2) FMLA retaliation, (3) disability discrimination in violation of the CFEPA, (4) domestic violence victim discrimination in violation of the CFEPA, and (5) retaliation in violation of the CFEPA. Am. Compl. ¶¶ 34-73.

Zurich filed a Motion to Dismiss and accompanying memorandum of law on October 16, 2024. Mot. to Dismiss, ECF No. 23; Mem. of L. in Supp. of Def.'s Mot. to Dismiss Am. Compl. ("Def.'s Mem."), ECF No. 24. After five months passed without a response, I entered an Order on March 19, 2025, notifying Sanders' counsel of her overdue response. ECF No. 26. Sanders filed her response brief, together with a motion for extension of time *nunc pro tunc*, on March 24, 2025. Obj. to Def.'s Mot. to Dismiss ("Pl.'s Mem."), ECF No. 28. Zurich replied in support of its Motion on April 7, 2025. Reply Mem. in Supp. of Def.'s Mot. to Dismiss Am. Compl. ("Def.'s Reply"), ECF No. 30.

## II.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F.

---

[2] The Honorable Kari A. Dooley, United States District Judge, presided over this action until it was transferred to me on January 6, 2025. ECF No. 25.

Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin

to a probability requirement," it "asks for more than a sheer possibility that a defendant has

acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the

plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine

whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*,

648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations

or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d

140, 149 (2d Cir. 2008).

## III.    <u>DISCUSSION</u>

Zurich submits that the Amended Complaint does not plausibly plead violations of the

FMLA or CFEPA. As I explain below, I conclude that Sanders has stated a claim of FMLA

retaliation and interference, but I find that the Amended Complaint does not state a claim of

CFEPA discrimination or retaliation.

### A.    **FMLA Claims (Counts One and Two)**

Count 1 asserts that Zurich interfered with Sanders' FMLA rights by terminating her

employment even though Zurich knew Sanders was eligible for FMLA leave. Am. Compl. ¶¶

37-42. Count 2 claims that Zurich retaliated against Sanders in violation of the FMLA by

terminating Sanders soon after she requested paperwork to apply for FMLA leave. Am.

Compl. ¶¶ 43-52.

"FMLA claims come in at least two varieties: interference and retaliation." *Woods v.*

*START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). As the

Second Circuit has explained,

> [A]n employee brings an "interference" claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. "Retaliation" claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer. The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

*Id.* (citations omitted). Although interference and retaliation claims are both rooted in 29 U.S.C. § 2615(a)(1),[3] *Woods*, 864 F.3d at 167, "[c]ourts have generally allowed such dual interference-retaliation claims to proceed as non-duplicative." *Mehta v. DLA Piper LLP*, No. 23 CIV. 4757 (AT), 2025 WL 2771659, at *9 (S.D.N.Y. Sept. 29, 2025).

### 1.    FMLA Retaliation

Count 2 of the Amended Complaint contends that Zurich is liable for retaliating against Sanders by terminating her after she signaled her intent to apply for FMLA leave. Am. Compl. ¶¶ 43-53.

FMLA retaliation claims are evaluated under the familiar *McDonnell Douglas* burden shifting framework for employment discrimination claims. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). Thus, to state a *prima facie* claim of FMLA retaliation, a plaintiff "must establish that: 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* "At the pleading stage, the plaintiff's burden is even lower. The

---

[3] 29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." The Department of Labor promulgated regulations stating that the "prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

Second Circuit has held that a plaintiff is not required to plead even 'a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 45 (D. Conn. 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Vega*, 801 F.3d at 84 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

Zurich argues that Sanders' retaliation claim fails because Sanders was never entitled to take FMLA leave in the first place. Def.'s Mem. 11-13.[4] "In order for a plaintiff to 'exercise rights protected under the FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA benefits." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 469 (S.D.N.Y. 2023) (quoting *Potenza*, 365 F.3d at 168). Zurich contends that Sanders has not stated a claim of retaliation because she has not alleged that she or a family member suffered a "serious health condition" that would have entitled her to take FMLA leave. Def.'s Mem. 5-8; Def.'s Reply 2-4. Sanders responds that her mental health conditions and her father's condition of stage 4 cancer both qualified as "serious health conditions" at the time she was terminated in June 2023. Pl.'s Mem. 8-11. She submits that Zurich retaliated against her by terminating her after she informed her supervisor that she was

---

[4] Zurich does not argue that the retaliation claim fails because Sanders never applied for or took FMLA leave. In any event, "it would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).

considering applying for FMLA leave and requesting FMLA leave paperwork from Zurich's human resources department. Am. Compl. ¶ 42.

The FMLA "generally requires covered employers to grant employees who have worked for twelve months (or 1250 hours in twelve months) up to twelve weeks' leave during any twelve month period for, *inter alia*, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hale v. Mann*, 219 F.3d 61, 68 (2d Cir. 2000) (quoting 29 U.S.C. § 2612(a)(1)(D)). An employee is also entitled to take FMLA leave to care for "the spouse, or a son, daughter, or parent, of the employee," where the relative suffers from "a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11).

Sanders contends that both she and her father experienced conditions that satisfy the "continuing treatment" prong. Pl.'s Mem. 11.[5] Regulations promulgated by the Department of Labor[6] provide several different ways that an employee can satisfy the "continuing

---

[5] Sanders does not assert that she or her father experienced conditions that would satisfy the "inpatient care" prong. *See* 29 C.F.R. § 825.114 ("Inpatient care means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care.").

[6] The Department of Labor promulgated these regulations pursuant to the authority delegated by Congress. 29 U.S.C. § 2654. "Courts in this district have relied on Department of Labor regulations to determine whether a plaintiff's injury satisfies the FMLA's definition of a serious health condition." *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746 (KMK), 2025 WL 903757, at *18 (S.D.N.Y. Mar. 25, 2025) (citation and internal quotation marks omitted).

treatment" prong. 29 C.F.R. § 825.115. Nonetheless, an employee is eligible to take leave only where the "serious health condition" renders the employee "unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.123 (defining when an employee is unable to perform their functions); *Mehta v. City of New York*, No. 1:19-CV-03857-NG-VMS, 2022 WL 280460, at *14 (E.D.N.Y. Jan. 31, 2022) (dismissing FMLA retaliation and interference claims where plaintiff failed to allege he was unable to work or needed to be absent from work to receive medical treatment). Sanders has not made the threshold showing of incapacity to demonstrate that her mental health diagnoses rendered her eligible for FMLA leave. Although the Amended Complaint describes several periods of absences, it does not state that Sanders' mental health conditions rendered her incapable of completing her assignments. I therefore find that Sanders fails to state a claim of FMLA retaliation insofar as she focuses on her mental health diagnoses.

In contrast, however, Sanders adequately alleges that her father's cancer treatment constituted a "serious health condition." The Amended Complaint states that Sanders informed her supervisor she intended to apply for leave to help her father recover from a surgery he was scheduled to receive as part of treatment for stage 4 cancer. Am. Compl. ¶ 22. These allegations, while cursory, support the inference that Sanders' father experienced a "[c]ondition[] requiring multiple treatments . . . that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, *such as cancer* (chemotherapy, radiation, etc.)." 29 C.F.R. § 825.115(e)(2) (emphasis added). *See also Blumstein-Torrella v. New York City Dep't of Educ.*, No. 19-CV-3492 (ALC) (VF), 2024 WL 4973393, at *9 (S.D.N.Y. Sept. 7, 2024) (surveying the legislative history of the FMLA and concluding that Congress "intended the

term serious health condition to include most cancers"), *report and recommendation adopted*, 2024 WL 4835669 (S.D.N.Y. Nov. 20, 2024).

Zurich argues that the Amended Complaint nonetheless fails to state a claim because Sanders "failed to provide a specific diagnosis, length of illness, or history of medical care to support a claim under the FMLA." Def.'s Reply 3 (quoting *Jansson v. Stamford Health, Inc*., No. 3:16-CV-260 (CSH), 2018 WL 1557250, at *9 (D. Conn. Mar. 30, 2018), *reconsid. granted on other grounds*, 2018 WL 1756595 (D. Conn. Apr. 11, 2018). But *Jansson* does not stand for the proposition that every FMLA claim premised on leave for cancer treatment must provide such a requisite level of detail. *See id.* at *9. Instead, the court in *Jansson* merely found that a proposed FMLA retaliation claim based on the employee's daughter's "neurological episode" failed to state a claim because it suggested "a temporary event," and the employee plaintiff had not included any other treatment details to support the inference that her daughter required continuing treatment as required by the FMLA's implementing regulations. *Id.* Sanders' allegation that she needed to be absent from work to attend to her father's needs during his cancer treatments (including surgery) does not suffer from the same defect.

Thus, Sanders has adequately alleged that she exercised a right guaranteed under the FMLA by seeking to take leave to care for her father in the midst of his cancer treatment. Zurich does not dispute that Sanders was otherwise qualified for her position, that she suffered an adverse employment action in the form of termination, or that the circumstances of that termination—less than one month after Sanders informed her supervisor she was considering applying for leave and just four days after she requested FMLA paperwork— support an inference of FMLA retaliation. *See Potenza,* 365 F.3d at 168. Accordingly, I

conclude that Sanders has adequately pleaded a claim of FMLA retaliation relating to her eligibility to take leave to care for her father during his cancer treatment.

### 2.    FMLA Interference

Generally, to prevail on a claim of FMLA interference relating to an attempt to take leave, "a plaintiff must establish 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Haran v. Orange Bus. Servs., Inc.*, 160 F.4th 51, 56-57 (2d Cir. 2025) (quoting *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016)).

Zurich does not seriously dispute that Sanders has established the first four *Graziadio* factors.[7] But Zurich argues that Sanders has not alleged that she was denied a benefit to which she was entitled under the FMLA. Def.'s Mem. 4-5. The thrust of Zurich's argument is that an interference claim premised on denial-through-termination is necessarily duplicative of any claim for retaliation. *Id.* Sanders maintains, however, that "termination can constitute interference when the employee is terminated <u>before</u> the employee can even apply for leave, thereby preventing the employee from exercising her FMLA rights." Pl.'s Mem. 7 (emphasis in original).[8]

---

[7] Zurich's briefing on interference does dispute whether Sanders was entitled to take FMLA leave. Def.'s Mem. 4. But as I explain above, the Amended Complaint adequately pleads that Sanders was entitled to take leave to care for her father ahead of his planned treatment for stage 4 cancer.

[8] The Amended Complaint also includes the conclusory allegation that Zurich "failed to notify [Sanders] that she was an eligible employee under the FMLA upon her request for qualifying leave." Am. Compl. ¶ 41a. To the extent not belied by the fact that Zurich sent Sanders an FMLA application the day after she requested the paperwork, *see id.* ¶¶ 28-29, this failure to notify

The Second Circuit has not specifically addressed whether a plaintiff states a claim of interference where she is terminated shortly after requesting FMLA paperwork. Several district courts in this Circuit have permitted interference-by-termination claims to proceed where a plaintiff was terminated before taking anticipated leave. *See, e.g.*, *Mehta v. DLA Piper LLP*, No. 23 CIV. 4757 (AT), 2025 WL 2771659, at \*9 (S.D.N.Y. Sept. 29, 2025) (denying summary judgment on interference-by-termination claim where competent evidence suggested employee's "intent to take FMLA leave was a motivating factor" in her termination); *DeAngelo v. Yellowbook Inc*., 105 F. Supp. 3d 166, 182-83 (D. Conn. 2015) (denying summary judgment on interference-by-termination claim because employer may have viewed request for FMLA leave as negative factor in decision to terminate*); Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 286-87 (S.D.N.Y. 2013) (denying summary judgment on interference claim where employer terminated employee three weeks before employee was due to take FMLA leave).

In a summary order, the Second Circuit affirmed a grant of summary judgment to an employer, stating that the mere fact that the employee's termination "prevented him from taking future FMLA leave—which he had not yet requested, and had no plans to request— does not create an issue of fact" as to whether the employer interfered with the employee's

---

allegation fails to state an interference claim because the Second Circuit has stated that an employer's failure to provide notice of FMLA eligibility "is actionable interference only if an employee was prejudiced by this failure." *Haran*, 160 F.4th at 58. The Amended Complaint fails to describe any way in which Sanders was prejudiced by the asserted failure to provide notice of her eligibility for FMLA leave. *Cf. Mitura v. Finco Servs., Inc*., 712 F. Supp. 3d 442, 455-56 (S.D.N.Y. 2024) ("An interference claim can arise where the employee is not provided with the necessary information regarding the employer's FMLA leave policies, and the employee is denied the ability to conform a desired period of leave to the employer's policies so as to preserve the right to reinstatement, a crucial benefit of the FMLA."), *reconsid. denied*, No. 23-CV-2879 (VEC), 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024).

FMLA rights. *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012). Consistent

with *Thomsen*, several district courts in this Circuit have rejected FMLA interference claims

premised on an employee's contention that their termination necessarily interrupted an

indeterminate plan to seek protected leave. *See Hewett v. Triple Point Tech., Inc*., 171 F.

Supp. 3d 10, 18 (D. Conn. 2016) (granting summary judgment on interference claim where

employee "had not yet requested time off, nor did she have any concrete plans to do so");

*Kelly v. Hartford Financial Services Group*, No. 3:16-CV-1463 (DJS), 2019 WL 13271841,

at *10 (D. Conn. Aug. 29, 2019) (granting summary judgment to employer on interference

claim where employee "never contacted [his employer] about a second FMLA leave and did

no more than express his intention to apply for FMLA leave to his managers" when his wife

gave birth to their child eight months in the future), *aff'd*, 818 F. App'x 83 (2020).[9]

     Here, although the factual record is sparse, the well-pleaded facts in the Amended

Complaint distinguish this case from *Thomsen* and the line of authority described above

insofar as Sanders had a far more definite and imminent plan to apply for FMLA leave that

was interrupted by her termination. Sanders had informed her supervisor of her plan to take

FMLA leave and given her supervisor the date when she would take leave to care for her

---

[9] The Second Circuit's summary order in *Kelly* observed that Kelly alleged "he informally and verbally notified his managers of his wife's second pregnancy and his intent to take FMLA leave approximately eight months later" but "in the nearly six months between this alleged notice and his alleged constructive termination, Kelly never once applied for leave through the established procedures." 818 F. App'x at 85. The Second Circuit observed the result may have been different had the employee "point[ed] to any 'unusual circumstances' that precluded him from applying through [his employer's] procedures." *Id.* (quoting 29 C.F.R. § 825.302(d)).

father following his scheduled surgery. Am. Compl. ¶ 22. Sanders had also requested FMLA

paperwork only eight days before she was terminated. *Id.* ¶¶ 29-31.[10]

Neither the parties' briefing nor my research has identified any binding authority

addressing whether (1) an FMLA interference claim can proceed where it is rooted in the

same operative facts as the retaliation claim or (2) claims of interference-by-termination

should be evaluated only under the framework for retaliation. Indeed, the parties' briefing

devotes little attention to either issue.[11] Thus, absent meaningful adversary presentation on

---

[10] Although *Thomsen* involved an employee's assertion that he lost the chance at hypothetical leave, a court in this District rejected an interference claim as duplicative of a retaliation claim where an employee was fired less than four weeks after making an actual request for intermittent leave to care for her foster children. *See Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 48 (D. Conn. 2023) ("[Plaintiff's] interference claim is premised on the theory that, by terminating her, [her employer] prevented [her] from exercising rights to which she would have been entitled under the FMLA had she remained employed the company. As other courts have recognized, however, this theory of 'interference by termination' is 'merely a retaliation theory in disguise.'") (quoting *LeClair v. Berkshire Union Free Sch. Dist.*, No. 1:08-cv-01354 LEK/RF, 2010 WL 4366897, at *6 (N.D.N.Y. Oct. 28, 2010); *see also Chacon v. Brigham & Women's Hosp.*, 99 F. Supp. 3d 207, 214 (D. Mass. 2015) (holding that interference claim premised on denial-through-termination was redundant of retaliation claim because "an employer who terminates an employee for exercising or attempting to exercise her FMLA rights has committed a retaliatory act of interference that must be evaluated under the retaliation framework").

In addition to *Blake*, Zurich relies on *LeClair* and *Khan v. ELRAC, LLC*, No. 3:23-CV-00003 (KAD), 2024 WL 1344694, at *5 (D. Conn. Mar. 29, 2024). However, in *LeClair* and *Khan*, unlike the present case, the plaintiffs asserting interference and retaliation claims had taken leave *prior* to termination. *See LeClair*, 2010 WL 4366897, at *7 ("The gravamen of Plaintiff's claim is therefore that Defendant terminated Plaintiff as a response to her past absences, which this Court finds is a claim that lies in retaliation rather than interference."); *Khan*, 2024 WL 1344694, at *5 ("Plaintiff asserts that Defendant interfered with her right to take FMLA leave by terminating her in response to her actual taking of such leave, an allegation that is indistinguishable from Count Three, in which Plaintiff alleges that Defendant retaliated against her by terminating her employment.").

[11] As Zurich notes, Sanders' opposition memorandum "does not distinguish" this case from *Khan*, *Blake*, or *LeClair*. Def.'s Reply 1. Instead, Sanders' brief cites to several out-of-circuit decisions, including *Erdman v. Nationwide Insurance Co.*, 582 F.3d 500 (3d Cir. 2009). But in *Erdman*, the Third Circuit held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Id.* at

these legal issues, in light of the still sparse factual record before me, and because the

retaliation claim will in any event survive, I exercise my discretion to deny Zurich's motion

to dismiss the interference claim in order to permit further development of the record.

**B.    CFEPA Discrimination Claims (Counts Three and Four)**

Counts Three and Four assert that Zurich discriminated against Sanders in violation of

the Connecticut Fair Employment Practices Act (CFEPA). Count Three contends that Zurich

discriminated on the basis of Sanders' disability. Am. Compl. ¶¶ 54-61. Count Four asserts

discrimination on the basis of Sanders' status as a victim of domestic violence. *Id.* ¶¶ 62-68.

These two causes of action present three different theories of liability: (1) failure to

accommodate; (2) hostile work environment; and (3) termination on account of disability.

Am. Compl. ¶¶ 54-66. For the reasons stated below, I conclude that each theory fails to state

a claim. Because of the significant conceptual overlap between Counts Three and Four, I

jointly address whether any theory of liability states a CFEPA claim.

**1.    Failure to Accommodate**

The CFEPA provides that an employer shall not "discharge from employment any

individual . . . because of the individual's . . . mental disability, intellectual disability,

learning disability, physical disability, including, but not limited to, blindness, status as a

veteran, status as a victim of domestic violence, status as a victim of sexual assault or status

as a victim of trafficking in persons." Conn. Gen. Stat. § 46a-60(b)(1). "Section 46a-60(b)(1)

---

509. *Erdman* does not resolve the precise legal issues presented by Sanders' interference claim
because there, the plaintiff employee had submitted a concededly-valid request for FMLA leave
when she was terminated. *Id.* Here, in contrast, Sanders alleges that she was terminated after she
informed her supervisor that she intended to seek FMLA leave and requested FMLA paperwork
from the human relations department but before she could submit a valid request for FMLA leave.

requires employers to reasonably accommodate an employee's disability." *Bartolotta v. Hum. Res. Agency of New Britain, Inc*., 224 Conn. App. 248, 272, *cert. denied*, 349 Conn. 908 (2024) (citing *Curry v. Allan S. Goodman, Inc.,* 286 Conn. 390, 415 (2008)). The Connecticut Supreme Court has instructed that CFEPA failure to accommodate claims should be evaluated under the same standard as is applied to claims brought under the Americans with Disability Act (ADA). *Curry*, 286 Conn. at 415 ("[W]e review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes.").

"To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) his employer refused to make a reasonable accommodation." *Tudor v. Whitehall Cent. Sch. Dist*., 132 F.4th 242, 246 (2d Cir. 2025) (emphasis omitted; citation and internal quotation marks omitted). "The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. New York State Dep't of Lab*., 205 F.3d 562, 566 (2d Cir. 2000). The goal of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Sivio v. Village Care Max*, 436 F. Supp. 3d 778, 794 (S.D.N.Y. 2020) (citation and internal quotation marks omitted). To survive a motion to dismiss, a plaintiff need only "identify a reasonable accommodation and plausibly allege that [the employer] denied it." *Samuels v.*

*Urb. Assembly Charter Sch. for Comput. Sci.*, No. 23-CV-1379 (RA), 2024 WL 4008165, at

*9 (S.D.N.Y. Aug. 30, 2024).

Sanders contends that Zurich failed to accommodate her status as a victim of

domestic violence by providing a leave of absence in which Sanders could obtain services,

counseling, or seek legal recourse against her abuser. *Id.* ¶ 65.[12] But Sanders concedes that

Zurich never denied her leave. Pl.'s Mem. 15 (stating that "Plaintiff does not allege that she

was denied leave"). As Sanders does not allege that Zurich rejected her request for

reasonable accommodation, she does not state a claim of failure to accommodate her status

as a victim of domestic violence under the CFEPA.

Sanders also asserts that Zurich violated the CFEPA by failing to provide a

reasonable accommodation for her disability. Am. Compl. ¶ 58. Although the Amended

Complaint does not identify the physical disability that affected Sanders, I construe her to

assert that she was entitled to accommodation on account of the condition that required her to

undergo planned stomach surgery in September 2022. *See* Am. Compl. ¶¶ 8-13. Zurich

contends that Sanders has not demonstrated that she experienced a physical disability as

recognized by the CFEPA. Def.'s Mem. 9-11. I agree.

"CFEPA's definition of physical disability is broader than the ADA's." *Beason v.

United Technologies*, 337 F.3d 271, 277-78 (2d Cir. 2003). The CFEPA defines "[p]hysically

---

[12] The Amended Complaint also alleges that Zurich failed to provide "a reasonable leave of absence." Am. Compl. ¶ 65a-c. The Amended Complaint notes that Sanders felt "overwhelmed with the amount of work she was assigned" after she took medical leave in 2022. *Id.* ¶¶ 11-13. But as the Amended Complaint does not assert that Sanders sought an accommodation concerning her leave of absence, the allegation that Zurich failed to provide a "reasonable leave of absence" fails to state a claim of CFEPA violation. I therefore need not address Zurich's argument that adjusting Sanders' workload would not constitute a reasonable accommodation. Def.'s Mem. 10-11.

disabled" as "refer[ring] to any individual who has any chronic physical handicap, infirmity or impairment." Conn. Gen. Stat. § 46a-51(15). "To be chronic, the condition does not need to be permanent." *Jones v. Acuren Inspection Inc.*, No. 3:23-CV-1054 (VAB), 2024 WL 1141932, at *5 (D. Conn. Mar. 15, 2024). Nonetheless, courts dismiss CFEPA physical disability claims where a plaintiff does not plausibly allege they suffered a condition characterized by its "long duration, or characterized by slowly progressive symptoms; deepseated and obstinate, or threatening a long continuance; distinguished from acute." *Id.* at *4 (collecting cases). Courts have disagreed, however, as to whether to recognize as "chronic" only those conditions that are "unresponsive to medical treatment and ameliorative measures." *See Dawson v. Sec. Servs. of Connecticut Inc.*, No. 3:20-CV-1310 (SVN), 2022 WL 17477601, at *13 (D. Conn. Dec. 6, 2022).

Sanders does not respond to Zurich's contention that she did not suffer a chronic physical condition other than to state that her physical symptoms were accompanied by "severe mental health conditions, including depression and post-traumatic stress disorder." Pl.'s Mem. 13. Beyond asserting that Sanders required 5-6 days of leave for a planned stomach surgery in September 2022, the Amended Complaint is completely devoid of any other details regarding the condition. *See* Am. Compl. ¶¶ 7-33. I therefore agree that Sanders does not plausibly allege that she experienced a chronic physical disability that required accommodation under the CFEPA.

To the extent that Sanders seeks to recover on the basis of her mental health diagnoses, I find that any such claim must also be dismissed.[13] The Amended Complaint states that Sanders was diagnosed with "depression, post-traumatic stress disorder, generalized anxiety disorder, and borderline personality disorder" in May 2023. Am. Compl. ¶ 23. It contends that Sanders' supervisors were aware of her mental health challenges. *Id.* ¶ 24. But, to the extent that Zurich seeks to recover on a failure to accommodate claim, she must plausibly plead that Zurich refused her request to accommodate her mental health conditions. *Samuel*, 2024 WL 4008165, at *9. The Amended Complaint's discussion of the manner in which Zurich's supervisors reacted to her concerns about workload after returning from stomach surgery, Am. Compl. ¶¶ 12-13, does not support the inference that Zurich refused to accommodate Sanders' mental health conditions diagnosed in May 2023, *id.* ¶ 23. Nor does the Amended Complaint describe any other instances where Zurich refused Sanders' requests to restructure her position on account of her mental health diagnoses. I therefore dismiss the CFEPA claims premised on failure to accommodate Sanders' mental and physical disabilities.

### 2.    Hostile Work Environment

The Amended Complaint contends that Zurich's workplace was a hostile work environment. Am. Compl. ¶¶ 59, 66.

"To establish a claim of hostile work environment, the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

---

[13] I note that such a claim for failure to accommodate Sanders' mental health condition(s) is not clearly pleaded in the Amended Complaint.

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brittell v. Dep't of Corr.*, 247 Conn. 148, 166-67 (1998) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). The Connecticut Supreme Court has instructed that CFEPA hostile work environment claims should be analyzed under the same standard that applies to federal Title VII claims. *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both.").

   "Courts must examine 'all the circumstances' in determining whether an environment is 'hostile' or 'abusive,' including the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Gray v. Minn. Mining & Mfg. Co.*, 732 F. Supp. 3d 184, 191 (D. Conn. 2024) (quoting *Harris*, 510 U.S. at 23). "To prevail on a hostile work environment claim, a plaintiff who is harassed by a co-worker must show both (1) a hostile work environment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Gray*, 732 F. Supp. 3d at 191-92.

   Zurich argues that Sanders has failed to plead any facts to suggest this onerous standard has been satisfied. Def.'s Mem. 13-14. Sanders does not respond to this argument. *See* Pl.'s Mem. 12-16. Indeed, the only specific allegation at least arguably relevant to this analysis is the Amended Complaint's assertion that Sanders' supervisor said "I don't need details" after Sanders disclosed her abusive relationship. Am. Compl. ¶ 17. In light of Sanders' failure to address this argument for dismissal and the patently insufficient facts pleaded in support of this claim, I dismiss the hostile work environment claim.

### 3.    Disparate Treatment

Sanders asserts that Zurich violated the CFEPA by subjecting her to adverse employment actions on account of her disability and her status as a victim of domestic violence. Am. Compl. ¶¶ 60, 67.

"Discrimination claims asserted under the CFEPA 'are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green* for parallel federal claims under Title VII.'" *Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d, 49 (D. Conn. 2023) (quoting *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019)); *see also Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). "To state a claim for discrimination under the CFEPA, a plaintiff must plausibly allege, in the absence of direct evidence of discrimination, that [s]he is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Khan v. ELRAC, LLC*, No. 3:23-CV-00003 (KAD), 2024 WL 1344694, at *2 (D. Conn. Mar. 29, 2024) (citation and internal quotation marks omitted). "As to the last prong, the facts pled need only give 'plausible support to a minimal inference of discriminatory motivation.'" *Sellers v. First Student, Inc.*, No. 16-CV-236 (JCH), 2016 WL 6440111, at *4 (D. Conn. Oct. 28, 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Zurich concedes for the purposes of this Motion that Sanders was qualified for her position and that she experienced an adverse employment action. Def.'s Mem. 11. Zurich maintains, however, that Sanders has failed to plead facts to support an inference of

discrimination on account of her mental health conditions and status as a victim of domestic violence. *Id.* at 11-15.

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 112 (citation and internal quotation marks omitted). "In considering this sequence of events, evidence of 'temporal proximity' between the time an employer learns of an individual's inclusion in a protected class and termination 'is often an important consideration.'" *Pagan v. Research Found. of the City Univ. of N.Y.*, No. 24-CV-6500 (RA), 2025 WL 2793685, at *5 (S.D.N.Y. Oct. 1, 2025) (quoting *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020)); *accord Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019).

Sanders does not allege any discriminatory comments by her colleagues or supervisors and fails to identify any similarly situated coworker outside her protected statuses who received more favorable treatment. Instead, she relies entirely on the temporal proximity between when her supervisors learned about her protected statuses (as an individual with a mental disability and as a victim of domestic violence) and her termination in June 2023. *See* Pl.'s Mem. 14-16.

But the sparse allegations in the Amended Complaint suggest that Sanders disclosed that she was a victim of domestic violence only after she received a "final warning" related to her performance in January 2023 and well before she was terminated in June 2023. *See* Am. Compl. ¶¶ 17-26. Indeed, following this disclosure, the Amended Complaint states that

Sanders was told that her "performance had improved and that she was doing better." *Id.* ¶ 20. This sequence therefore fails to provide even minimal support for the proposition that Sanders was terminated because she is a victim of domestic violence.

And to the extent Sanders relies on the proximity between her mental health diagnoses in May 2023 and her termination in June 2023, the Amended Complaint does not support an inference of discriminatory motivation because it does not allege that Sanders' supervisors knew about her diagnoses or perceived her as having a mental disorder. This omission is noteworthy because the CFEPA anti-discrimination provision is limited to "an individual who has a record of, or is regarded as having one or more mental disorders, as defined in the most recent edition of the American Psychiatric Association's 'Diagnostic and Statistical Manual of Mental Disorders.'" Conn. Gen. Stat. § 46a-51(20); *see generally Eaddy v. City of Bridgeport*, 156 Conn. App. 597, 606 (2015) (affirming grant of summary judgment for employer because employee failed to demonstrate "that the defendant regarded the plaintiff as having a mental disability as that term is defined in . . . § 46a-51(20)").

Thus, an employee does not state a CFEPA claim of disparate treatment on account of mental disability unless she pleads facts to support the inference that her employer at least perceived her to have a mental disability as defined in § 46a-51(20). *Compare Barbabosa v. Manchester Bd. of Educ.*, No. HHDCV166069912S, 2018 WL 710395, at *6 (Conn. Super. Ct. Jan. 11, 2018) (holding that plaintiff had not established *prima facie* case of discrimination on basis of mental disability because she "could provide no details on when, where, or how she informed" her supervisor of her diagnosed conditions), *aff'd sub nom.*, 189 Conn. App. 427 (2019), *with Charter Commc'ns, LLC v. Commission on Hum. Rts. & Opportunities*, No. HHB-CV-23-6080048-S, 2024 WL 4678361, at *5 (Conn. Super. Ct.

Nov. 1, 2024) (finding that employee satisfied *prima facie* showing where evidence showed the employer terminated the employee "just days after [the employer] became aware that [the employee] had a mental health disability").

Although the Amended Complaint states that Sanders' supervisor "knew that Plaintiff was experiencing mental health issues and was seeking mental health treatment," Am. Compl. ¶ 24, this does not support the inference that Sanders' supervisors knew or perceived Sanders to have a mental disorder. Moreover, the Amended Complaint does not even clearly state when or how Sanders' supervisors learned about her efforts to seek treatment, let alone any diagnoses Sanders received as part of that treatment. Since temporal proximity between disclosure of a protected status and termination is the entire basis for the disparate treatment claim, I cannot say that the well-pleaded facts support the inference that Zurich treated Sanders differently on account of any "mental health disability." Conn. Gen. Stat. §§ 46a-51(20), 60(b)(1).

 I therefore conclude that the disparate treatment theory fails to state a claim of CFEPA discrimination.

### C.    CFEPA Retaliation (Count Five)

Count Five asserts that Zurich violated the CFEPA by retaliating against Sanders because Sanders opposed Zurich's purportedly discriminatory employment practices. Am. Compl. ¶¶ 69-73. The CFEPA provides that an employer cannot discharge an employee "because such person has opposed any discriminatory employment practice." Conn. Gen. Stat. § 46a-60(a)(4). "To state a claim for retaliation under the CFEPA, a plaintiff must demonstrate: (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between

the protected activity and the employment action." *Dagenais v. Wal-Mart Stores E., LP*, No. 3:23-CV-241 (SVN), 2023 WL 7220753, at *2 (D. Conn. Nov. 2, 2023) (citation and internal quotation marks omitted).

Zurich submits that Count Five fails to state a claim because Sanders has not plausibly alleged that she engaged in any protected activity. Def.'s Mem. 15-16. Sanders does not respond to this argument for dismissal of Count Five. In light of Sanders' failure to contest dismissal of this cause of action and the absence of any allegation that Sanders engaged in a protected activity while employed by Zurich, I agree that Count Five should be dismissed for failure to state a claim.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is denied as to Count One (FMLA interference) and Count Two (FMLA retaliation). The Motion to Dismiss is granted as to all other causes of action. Counts Three and Four are dismissed without prejudice. Count Five is dismissed with prejudice because Plaintiff failed to contest dismissal of this count. If Plaintiff believes that any of the deficiencies identified in this Opinion regarding Counts Three and Four can be remedied through repleading, she may file an Amended Complaint on or before January 26, 2026. If Plaintiff instead seeks to proceed only on Counts One and Two, Plaintiff shall file a Notice stating that intention by this deadline.

**SO ORDERED.**

New Haven, Connecticut
January 5, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge